## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WILBUR DRIVER, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 15 C 4041 |
| | ) | |
| v. | ) | |
| | ) | Honorable Virginia M. Kendall |
| MARTIN CHATYS, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Wilbur Driver alleges that his constitutional rights were violated during his arrest by six Chicago Police Officers in their official and individual capacities[1], the City of Chicago, and Superintendent Garry McCarthy.[2] (Dkt. No. 27). Defendants move for summary judgment on Driver's claims against Defendant Chatys under Section 1983 for unreasonable search and seizure; against all six Defendant Officers for civil conspiracy; and against Defendants Wasielewski, Watkins, Downes, Hopps, and Parks under Section 1983 for failure to intervene. (Dkt. 82). Driver moves for partial summary judgment on his excessive force claim against Defendant Chatys. (Dkt. 86). For the reasons stated below, Plaintiff's motion is denied and Defendants' motion is granted in part and denied in part.

## STATEMENT OF FACTS

On the night of May 7, 2013, Defendants Chatys and Wasielewski were on duty as Chicago Police Officers in a marked patrol vehicle and effected a traffic stop of Plaintiff Wilbur

---

[1] Officers Martin Chatys ("Chatys"), Carl Wasielewski ("Wasielewski"), Andre Watkins ("Watkins"), Roxana Hopps ("Hopps"), and Earl Parks ("Parks").
[2] The Court dismissed Plaintiff's municipal liability claims against McCarthy and the City of Chicago upon Defendants' motion. (Dkt. No. 48).

Driver for riding a motorcycle while not wearing googles. (Defs. SOF ¶ 4). The motorcycle driven by Driver was stolen. (Defs. SOF ¶ 5). Driver's son, Romell Burgess, had been following Driver in a van prior to the traffic stop. (Defs. SOF ¶ 6). When Chatys attempted to arrest Driver, Driver fled. (Pl. SOF ¶ 8; Defs. SOF ¶¶ 9-10). Driver ran to the van and jumped in through the driver's side front door onto Burgess, his son's, lap. (*Id.*). Chatys followed and leapt on top of Driver, at which point the van started to move and increased speed. (Defs. SOF ¶¶ 11-12; Pl. Resp. ¶ 11). There is a dispute as to what speed the van reached: Driver claims 10-15 mph and Defendants claim 40-45. (Defs. SOF ¶ 18; Pls. Resp. to Defs. SOF ¶ 18). Chatys attempted to turn stop the van by removing the ignition keys or shifting gears to park or neutral. (Defs. SOF ¶ 13). As Chatys struggled to establish his footing inside the moving van, his feet dangled out of the open door over the roadway. (Defs. SOF ¶ 17). He ordered Burgess to stop the vehicle and warned that if he did not do so he would shoot him. (Defs. SOF ¶ 18). Driver and Burgess attempted to push Chatys out of the van, for which they were convicted after trial of aggravated battery of a peace officer under 720 Ill. Comp. Stat. Ann. § 5/12-3.05(d)(4)(ii). (Defs. SOF ¶¶ 21-22, 44, 46).[3] Burgess did not stop the vehicle, so Chatys yanked the steering wheel to the side, forcing the van to crash into a fence. (Defs. SOF ¶ 23). Driver avers Burgess steered the van into the fence once Chatys threatened to shoot him, but this account is unsupported by the record. (Pls. Resp. to Defs. SOF ¶¶ 20-23).

Carlos Rivera Olivo (Rivera), a private citizen, witnessed the traffic stop from his car. (Defs. SOF ¶ 24.) He watched Chatys jump into the van and saw the van crash into the fence. After the crash, Olivio left his car to assist Chatys. (*Id*). Rivera helped him pull Driver out of

---

[3] Unlike the resisting charge, the indictment for aggravated battery specified that it was for pushing Chatys out of a moving vehicle. (Defs. SOF at Ex. G).

the van.[4] (Defs. SOF ¶ 28; Pl. SOF ¶ 10). When additional officers arrived at the scene, they handcuffed him as well as Burgess. (Rivera Dep. 21: 18-23). The parties agree that officers found a bag of heroin in Driver's front right pocket, but Driver denies Defendants' assertion that he reached down toward his right leg prior to their discovery of the drugs. (Defs. SOF ¶¶ 31-32; Pl. Resp. to Defs. SOF ¶¶ 31-32).

The parties dispute much of what took place after Chatys and Rivera removed Driver from the van. In Driver's account, Chatys forced him face down on the pavement. (Pl. SOF ¶ 11.) Driver claims that although he was "completely subdued," Chatys then straddled his back with his knees on Driver's elbows. (Pl. SOF ¶¶ 10–11). He further claims that Chatys reached around to choke him, digging his fingers and his thumbs into his throat so hard he could not breathe, and rubbed Driver's face against the ground, scraping skin off his face. (Pl. SOF ¶ 11). After four to seven additional squad cars arrived, Chatys then put his knee into Driver's back and lifted his arms, still in handcuffs, above his head. (Pl. SOF ¶ 12). Driver screamed for Chatys to stop because he felt that his arm was about to break. (Pl. SOF ¶ 11). Rivera testified that Driver screamed in pain while Chatys held him with one hand on his handcuffs and one hand on his shoulder. (Rivera Dep. 19:6–19).

Driver further testified that Chatys only released his arms when another officer, whom Driver assumed to be Wasielewski, told him witnesses were watching. (Pl. SOF ¶ 11). After Chatys released Driver's arms, Rivera jumped onto his back and sat there. (Pl. Resp. to Defs.

---

[4] There is inconsistency both in the record and the parties' pleadings as to whether Rivera helped pull Driver out of the van. Rivera testified in his deposition that he assisted Chatys by holding Burgess while Chatys removed Driver from the van. (Rivera Dep. 13: 20–14: 11, 17: 8–21). Chatys' testimony at trial seems to suggest the same. (Defs. SOF Ex. A, 26: 2–11). However, Driver's deposition testimony is that Rivera and Chatys pulled him out together. (Driver Dep. 59: 24–61: 10), and the parties initially agreed upon his version of events. (Pl. SOF ¶ 10; Defs. Resp. to Pl. SOF ¶ 10). Driver then reversed course in his Response to the Defendants' Statement of Facts, claiming that Rivera held Burgess while Chatys pulled Driver out of the van. (Pl. Resp. to Defs. SOF ¶ 25). In reply, the Defendants' asserted that Rivera's deposition testimony, while vague, lends support to both narrative, even though the record cite they provide supports only the version settled upon by Driver: that Chatys withdrew him from the van while Rivera held Burgess. (Defs. Reply in Supp. Of. SOF ¶ 25, Rivera Dep. 14: 4–7).

SOAF ¶ 2; Driver Dep. 59: 23–61: 6). During the subsequent twenty minutes or so, Driver claims, he sustained further injuries to his face when officers bumped him with their feet and walked on him while he was handcuffed and laying face-down in the street. (Driver Dep. 63: 3–64: 5; Pl. SOF ¶ 13 (Driver was "injured in that he was beaten in the face")). Driver cannot identify the officers who engaged in these actions. (Driver Dep. 63: 3–64: 5). Finally, officers stood Driver up, carried him to a squad car, and threw him inside. (Pl. SOF ¶ 13). Driver claims that, once he was in the squad car, officers stood around the car to prevent anyone seeing him. (*Id.*). In addition to the injuries to his face, Driver also sustained injuries to his wrists from the handcuffs and claims to have suffered emotional damage. (*Id.*). Apart from his own testimony, there is no evidence in the record corroborating Driver's claims that his handcuffs were tight to the point of causing injury.

Defendants deny that Chatys forced Driver face down on the pavement. (Defs. Resp. to Pl. SOF ¶ 11). They claim that Driver began kicking and continued to resist Chatys after he was removed from the van, and that Rivera helped Chatys control Driver and keep him in place. (Defs. SOF ¶ 27, 28). Rivera likewise testified that Driver was still trying to run away from Chatys once he was taken out of the van. (Rivera Dep. 18: 20–19: 2). Citing to Chatys' testimony at Driver's criminal trial, the trial court's guilty finding as to resisting arrest, and Driver's certified conviction, Defendants suggest that Driver's actions after being pulled from the van were the basis for the conviction. (Defs. SOF ¶¶ 27, 44; Defs. Reply at 2–3). Defendants also deny that Chatys straddled Driver's back and drove his knees into Driver's elbows, that Chatys rubbed Driver's face against the concrete, causing skin to scrape off, and that Chatys reached around to drive his fingers into Driver's throat. (Defs. Resp. to Pl. SOF ¶ 11.) Defendants further disagree that Chatys attempted to pull Driver's arms over his head while he

was handcuffed. (Defs. Resp. to Pl. SOF ¶ 12), and that Driver screamed for Chatys to stop or that his arm was about to break. (Defs. Resp. to Pl. SOF ¶ 11.) Rivera, who was at the scene of the incident throughout the period of Chatys's alleged physical abuse, (Pl. Resp. to Defs. SOAF ¶ 2; Driver Dep. 59: 23–61: 6) ,testified that he never saw Chatys (1) force Driver's face into the pavement (Rivera Dep. 18: 14–16); (2) hit, punch, or kick Driver (Rivera Dep. 18: 5–13); (3) choke Driver (Rivera Dep. 20: 15–19); or (4) attempt to pull Driver's arms over his head (Rivera Dep. 20: 23–21: 2). Apart from Driver's own testimony, there is no evidence in the record corroborating his statements that Chatys choked him.

Defendants deny that Wasielewski warned Chatys a witness was watching. (Defs. Resp. to Pl. SOF ¶ 12). They further deny that Driver was beaten in the face, that officers carried Driver to a squad car, and that they threw him into a squad car. (Defs. Resp. to Pl. SOF ¶ 13). Defendants further deny that, once Driver was inside the squad car, they stood around the car to prevent anyone from seeing Driver. (Defs. Resp. to Pl. SOF ¶ 13). Finally, they deny that Driver's handcuffs were tight enough to injure his wrists. (*Id.*).

Testimony from eyewitness Shantell McCullar, Driver's close family friend[5], testified consistently with Driver that Chatys straddled him and drove his elbows into the ground. McCullar testified that she heard Driver screaming at someone to stop, that he was handcuffed and that the other person was going to break his wrists. (McCullar Dep. 24: 4–20). When she walked out of her house toward the street, she saw Driver handcuffed and face-down on the street. (McCullar Dep. 28: 20–29: 8). A police officer was on Driver's back, and the officer's knees were on his forearms. (McCullar Dep. 29:9–30:5). McCullar claimed that she walked back inside her house to call Sheila Burgess, then resumed her previous position near the street

---

[5] Driver's mother, Shirley Burgess, describes McCullar as "like family," and has known her for thirty-five years. (Shirley Burgess Dep. 11: 10-22).

three to four minutes later, where she again saw Driver and the officer in the same positions. (McCullar Dep. 31: 5–12, 45: 1–17, 49: 23–51: 11). She testified that as she was watching them, an African American officer looked at her and brushed the shoulder of the officer on top of Driver. (McCullar Dep. 43: 2–44: 1). In response, that officer repositioned himself so that his knees were on the concrete. (McCullar Dep. 43: 24–44: 24).

Driver's aunt Sheila Burgess, and his mother, Shirley Burgess, testified that Driver's face appeared to be injured when they saw him on the night of the incident. (Pl. SOAF ¶ 9; Sheila Burgess Dep. 14:1 7–15: 6, 25: 16–26: 2, 27: 12–22, 34: 7–35: 4; Shirley Burgess Dep. 22: 19–23: 14, 47: 9–16, 54: 3–15). Sheila Burgess arrived just as officers were putting Driver into a squad car. (Sheila Burgess Dep. 11: 7–12: 9, 31: 17–32: 12). She testified that initially she could not see Driver's face inside the car because several officers were standing in front of the car. She further testified that when the officers walked away from the car she approached the car and could see Driver's face, but the officers quickly returned and pushed her away from the car. (Sheila Burgess Dep. 18: 2–24, 35: 15–38: 16, 42: 24–43: 15). She is nearsighted and was not wearing her glasses at the scene. (41: 23–42: 12, 42: 24–44: 5, 44: 22–45: 2). When Shirley Burgess arrived at the scene of the incident Driver was already inside a squad car. (Shirley Burgess Dep. 18: 15–19: 5). She approached the car to speak to Driver, but an officer stepped out of the car and told her to get away, stopping her approximately twenty feet from the squad car. (Shirley Burgess Dep 19: 9–20: 2, 20: 22–21: 22). When the officer turned his back, she was able to approach within ten to twelve feet from the car, near enough to see Driver's face. (Shirley Burgess Dep. 21:10–20).

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is material depends on the underlying substantive law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). Because the plaintiff bears the burden of persuasion, the defendant's summary judgment burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); see also *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). The nonmovant must "go beyond the pleadings…to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." Id. at 1168-69 (internal quotation marks and citation omitted). Plaintiff must use more than a "scintilla of evidence." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014) (internal quotation and citation omitted). Summary judgment is appropriate where "no reasonable jury could rule in favor of the nonmoving party." See *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted).

## DISCUSSION

Driver moves for summary judgment on his excessive force claim. His motion consists of little more than a conclusory statement that Chatys used excessive force and a response to

Defendants' summary judgment argument that Driver's Section 1983 claims against Chatys are precluded by the *Heck* doctrine, under which civil claims that necessarily imply the invalidity of a criminal conviction are barred. (Dkt. No. 86.) *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372-73 (1994); *cited in Tolliver v. City of Chicago*, 820 F.3d 237, 242 (7th Cir. 2016).[6]

## I. Plaintiff's Local Rule 56.1 Statement

Under Local Rule 56.1(a)(3), the moving party shall file a statement of material facts "as to which the moving party contends there is no genuine issue," that "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR. 56.1(a).

Defendants make four arguments regarding Driver's Local Rule 56.1 statement. First, they argue that paragraphs 1– 6 and 9 should be stricken for failure to cite to the evidentiary record. (Dkt. No. 91 at 5–6). Second, they argue that paragraph 14 should be stricken because it relies on inadmissible hearsay. (Dkt. 91 at 8–10). Third, they argue that paragraphs 6, 7, 8, 10, 11, 12, and 13 should be stricken because the material facts contained in each statement are disputed. (*Id.* at 6–8). Defendants also argue that Driver's Local Rule 56.1 statement should be dismissed in its entirety based on these disputes. (Dkt. 91 at 4–5). Fourth and finally, Defendants argue that statement 14 should be dismissed on the basis of inadmissible hearsay. (Dkt. 91 at 8.)

Each paragraph in a Local Rule 56.1 statement must include a specific reference to an affidavit, part of the record, or other supporting material to support the asserted fact. LR. 56.1(a). *See Chichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 808 (7th Cir. 2005) (district court

---

[6] Discussion of Defendants' Heck doctrine argument follows in the court's analysis of Defendants' motion.

properly struck party's Local Rule 56.1 response and additional facts because the facts were not supported by record evidence).  Defendants are correct that Driver's paragraphs 1–6 should be stricken for failure to cite to the evidentiary record.[7]  Defendants are correct that paragraphs 1–6 contain no record citations, and they are therefore stricken.  Paragraph 9, however, contains a citation to deposition testimony and will not be stricken.

Defendants next argue that Driver's paragraphs 6–8 and 10–13 should be stricken because the material facts contained in each statement are disputed.  (Dkt. 91 at 6–7.)  As to statement 7, there is a misleading pronoun: Driver refers to "his motorcycle," even though the record shows that the motorcycle was stolen.  (*See* Defs. LR.56.1(b)(3)(B) response at ¶ 7).  However, Driver plainly admits that the motorcycle was stolen in his response to Defendants' Local Rule 56.1(a) statement of facts, and therefore the fact that the motorcycle was stolen to be undisputed and paragraph 7 is stricken.  (*See* Pl. LR.56.1(b)(3)(B) response at ¶ 5).  As to Defendants' argument regarding paragraphs 6, 8, and 10–13, Local Rule 56.1 indeed requires the moving party submit a "statement of material facts as to which the moving party *contends* there is no genuine issue." L.R. 56.1(a)(3) (emphasis added).  The verb "contends" suggests that, in the context of summary judgment, one litigant's undisputed material fact will to often appear to an opposing litigant to be a misrepresentation of the record. (*Id.*).  Moreover, there is nowhere in Local Rule 56.1 a provision that any of a movant's facts disputed by the nonmovant will be stricken.  The rule only provides the converse: that when the nonmovant does not controvert facts set forth in the movant's statement those facts will be deemed admitted.  Local Rule

---

[7] Ultimately, this is of no consequence.  These facts include statements about jurisdiction (¶ 1); venue (¶ 2); Driver's residency in Chicago (¶ 3); Defendants were with the Chicago Police Department and are being sued in their individual and official capacities (¶ 4); that Gary Mccarthy is the superintendent of CPD, which Defendants point out is no longer the case; and that the City of Chicago was the public employer of the Defendants.  With the exception of the fact that Mccarthy is no longer the superintendent, there is no dispute relating to any of these statements and they have been established at other points in the record.

56.1(b)(3)(C). There is also nothing in the rule to support Defendants' argument that, although the presence of disputed facts is "not typically reason enough" to strike the whole of a movant's Local Rule 56.1(a)(3) statement, the aggregation of disputed facts in Driver's statement justifies the court to take such action. (Dkt. No. 91 at 7). Defendants fail to provide any legal authority, in the rule or in case law, to support their argument, and the Court will not exercise its discretion to strike Driver's Local Rule 56.1(a)(3)(C) statement in its entirety. Only statement 7 will be stricken, but not on the basis that it is disputed, instead because the parties agree that the motorcycle did not belong to Driver.

Defendants' final argument with respect to Driver's Rule 56 statement is that statement number 14 should be stricken because it relies on inadmissible hearsay. (Dkt. 91 at 8.) A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2011). "Hearsay" under Federal Rule of Evidence 801(c) "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In statement 14, Driver alleges that Officer Chatys has a history of complaints with the Independent Police Review Authority for excessive force and false arrests and relies on a print out from the internet listing the complaints from the "Citizens Police Data Project" website. (Pl. SOF ¶ 14; Dkt. 86 at Ex. 5.) Defendants argue that documents printed out from the internet are inadmissible hearsay and should be disregarded for the purposes of summary judgment. *See U.S. v. Jackson*, 208 F.3d 633 (7th Cir. 2000) ("[A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules.") (internal quotation omitted); *see also, e.g., Price v. Wrencher*, Case No. 13 C 1785, 2016 WL 4765694, at *1 (N.D.Ill. Sept. 12, 2016) (Darrah, J.) (disregarding the plaintiff's definition of a "greenstick fracture" that was

10

based on a website definition).  The Court similarly concludes that the evidence is inadmissible

hearsay.  Underscoring the danger of this hearsay, the website Driver cites to in support of

statement 14 includes the following disclaimer:

> The City of Chicago's release of this information was accompanied by a disclaimer that not all of the information contained in the City's database may be completely accurate. No independent verification of the City's records has taken place and this public database does not purport to be an accurate reflection of either the City's internal database or of its truthfulness.

Finding no exception to hearsay that Exhibit 5 could fit under, the Court strikes statement 14 and

Exhibit 5.  In summary, the Court strikes Driver's statement of facts 1–7 and 14 and Exhibit 5

will be stricken for failure to comply with Local Rule 56.1.

## II.   Excessive Force Claim

The parties' cross motions for summary judgment are denied as there are disputed

material facts and the *Heck* doctrine does not bar the claim. The *Heck* doctrine holds that the

plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the

invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral

review, or pardon.  *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  But this is not to say that a

plaintiff convicted of resisting arrest or assaulting a police officer during the course of an arrest

may not subsequently maintain a § 1983 action for excessive force stemming from the same

confrontation.  *See McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2003) (A contrary conclusion

would "imply that once a person resists law enforcement, he has invited the police to inflict any

reaction or retribution they choose, while forfeiting the right to sue for damages.") (internal

citations omitted); *see also Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014) (plaintiff

convicted of resisting arrest can proceed on a Section 1983 excessive force claim to the extent

that the facts underlying the excessive force claim are not inconsistent with the essential facts

supporting the conviction.).  The court "must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of [Plaintiff's] conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014).

Defendants move for summary judgment on the excessive force claim based on the *Heck* doctrine.  (Dkt. 83 at 4–7.)  Driver moves for summary judgment on the excessive force claim based on the conclusory statement that Officer Chatys used excessive force "after the plaintiff was completely subdued."  (Dkt. 86 at 2–4.)

Driver was convicted of numerous counts of aggravated battery to a police officer under 720 ILCS 5/2-12.305(d)(4)(i) and a count of resisting arrest and causing an injury to Chatys under 720 ILCS 5/31-1(a-7).  Defendants argue that *Heck* and its progeny, specifically *Okoro*, bar Driver's claim based on these convictions.  *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).  In that case, despite being convicted of selling drugs to an undercover officer, plaintiff Okoro maintained in his civil trial for unconstitutional search and seizure that he had not sold drugs. Okoro alleged that, rather than drugs, he had been trying to sell gems, and that the police officers stole these gems and framed *Okoro*.  The Circuit noted that Okoro could have maintained the position that the defendants had taken both gems and drugs, casting no cloud over the conviction; or he could've argued that the police took the gems and said nothing of the drugs, and then he would not actually be challenging the guilty verdict.  *Id.* at 490. Instead, Okoro refused to maintain an "agnostic position toward his conviction" and thus his claim could not succeed unless his conviction was invalid.  By challenging the guilty verdict, Okoro was barred by *Heck*.

But here, regardless of the outcome, the civil suit need not undermine the validity of the conviction as it did in *Okoro*.  324 F.3d at 489.  To the extent that the excessive force claim is

12

based on disputed facts occurring after the van crashed and Chatys and Driver were on the ground, Driver has a viable claim.  Driver argues that Chatys forced him face down on the street pavement while Chatys straddled Driver's back, kneed his elbows, and choked him.  (Pl. SOF ¶ 11.)  These facts do not conflict with the basis of Driver's criminal conviction as Okoro's claim that he was trying to sell gems rather than drugs conflicted with Okoro's drug dealing conviction. While there was some evidence that Driver continued to resist arrest after the van crashed came out at the trial[8], the core of the resisting arrest charge is based on Driver hopping into a getaway van and eventually throwing Chatys from the van.  For example, any facts relating to what happened after Driver was pulled from the van, and any alleged resisting or battery committed by Driver at that time, were absent from the indictment.   (Dkt. 84-7.)  The count for aggravated battery in the indictment stated: "They pushed Martin Chatys from a moving motor vehicle and Wilbur Driver and Romell Burgess knew the individual battered to be a peace officer[.]" (*Id.*)  It is possible for Driver to stay agnostic with regard to these facts while litigating whether Chatys used excessive force after the van crashed.   Should a jury find Driver's version of events credible, it will have no impact on his criminal convictions.

To the extent that Driver disputes the facts that are the basis of the criminal conviction, a Gilbert instruction would be proper for the jury should the case go to trial.  *See e.g. Viramontes v. City of Chicago*, 840 F.3d 423, 426-30 (7th Cir. 2016) (*Gilbert* instruction should be read to the jury at the start of trial, as necessary during the evidence, and at the close of discovery); *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008).  A Gilbert instruction is appropriate and will be tailored to be consistent with the criminal judge's findings and judgment.  *Gilbert*, 512 F.3d at 900, 902.  For those reasons, Driver's excessive force claim is not barred by the *Heck* doctrine on

---

[8] (Dkt. 84-1 at p. 15–16.)

the basis of the events that occurred after the van crashed and while Chatys was putting Driver into handcuffs.

## III.    Failure to Intervene

An officer "who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned" the violating officer to stop. *See Yang*, 37 F.3d at 285. The two prongs of this analysis almost always implicate questions of fact for the jury: "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Abdullahi*, 423 F.3d at 774 (quoting *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned" the violating officer to stop. *See Yang*, 37 F.3d at 285.

It is undisputed that all Defendants except Wasielewski and Chatys were absent from the scene and therefore could not have intervened. (Dkt. 83 at 13.) Driver admitted the following in response to Defendants' Rule 56 statement: Defendants Andre Watkins, Roxana Hopps, Thomas Downes, and Earl Parks were not present at the scene of the incident and did not personally

witness the interaction between Defendant Chatys, Plaintiff, and Romell Burgess. (Dkt. 94-1.) Because it is undisputed that the officers were not present, the failure to intervene claim against them is dismissed.

As to Wasielewski, Defendants only argument is that because the excessive force claim fails, so too does the failure to intervene claim against Wasielewski. (Dkt. 83 at 12.) Wasielewski was present at the time that Driver alleges Chatys used excessive force and Wasielewski had the opportunity to intervene.

## IV. Civil Conspiracy

As a threshold issue, Driver does not offer any meaningful response to Defendants' arguments regarding his civil conspiracy claims, and therefore waives any argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to argument results in waiver). Waiver notwithstanding, the Defendants are entitled to summary judgment on Driver's conspiracy claims. A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir.1988). To establish conspiracy liability in a Section 1983 claim, Driver must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." See *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citation omitted). To defeat summary judgment on a § 1983 conspiracy claim, Driver must demonstrate the existence of an agreement or acts "sufficient to raise the inference of mutual understanding" between the paramedics. *Admunsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir.2000) ("a conspiracy claim cannot survive summary judgment if the allegations are vague, conclusory and include no overt acts reasonably related to the promotion of the alleged conspiracy.") (internal citation and quotation omitted). While a conspiracy may be inferred through circumstantial evidence, the

circumstantial evidence must be "sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Green v. Benden*, 281 F.3d 661, 665–66 (7th Cir. 2002). Moreover, individual liability for a constitutional violation under Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). To survive summary judgment, then, a plaintiff "must at a minimum have (1) pled a claim that plausibly forms a causal connection between the official sued and some alleged misconduct, and (2) introduced facts that give rise to a genuine dispute regarding that connection. *Colbert*, 851 F.3d at 658 (Summary judgment was therefore appropriate where plaintiff claimed that four of the ten officers damaged his property during a search of his home but acknowledged that he could not identify the officers.).

In his Third Amended Complaint, Driver contends that Chatys, Wasielewski, Watkins, Downes, Hopps, and Parks conspired to prevent a witness from observing evidence of Chatys' use of excessive force. (Dkt. No. 27.) However, Driver has since admitted that Watkins, Downes, Hopps, and Parks were not present at the scene of the incident. (Pls. Resp. to Defs. SOF ¶ 33). Regarding Chatys and Wasielewski, Driver relies upon the testimony of Sheila Burgess that after a number of officers put Driver into a squad car, they obstructed her view of him by standing in front of the back door of the car. (Pl. SOF ¶ 13.) Burgess was not able to identify the officers and her testimony that her view was obstructed. (*Id*.). More importantly, the fact that her view was obstructed from the window of the squad care does not indicate a conspiracy. This is not an indication that there was an agreement nor meeting of the minds to obstruct Burgess's view. Moreover, if the Court were to find the obstruction alone sufficient to award summary judgment against the Defendants, then officers could potentially face liability

for civil conspiracy anytime police officers did not ensure eyewitnesses had clear lines of sight. Such a finding denies common sense and the reality of an officers' job. For those reasons, Defendants' motion for summary judgment on Driver's conspiracy claim is granted.

## CONCLUSION

For those reasons, Plaintiff Wilbur Driver [86] and Defendants' Motions for Summary Judgment [82] as to the excessive force claims are denied; Defendants' Motion for Summary Judgment [82] as to Plaintiff's failure to intervene claim is denied; and Defendants' Motion for Summary Judgment [82] as to Plaintiff's conspiracy claim is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 29, 2017